# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| Marcius Varner, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:16-cv-02340-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Serco Inc, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on Serco Inc.'s ("Serco") second motion for summary judgment, ECF No. 46. For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

On or about May 31, 2006, Marcius Varner ("Varner") began working for Serco as a warehouse associate, and on or about April 2008, Varner was promoted to Facilities Supervisor. All warehouse employees at Serco are required to be able to lift up to 50 pounds on a regular basis. On or about July 8, 2014, Varner injured his back and legs falling from a ladder at work. In July, 2014, he initiated workers' compensation proceedings and then returned to work with certain restrictions on how much weight he could lift. Between July and November, 2014, Varner was certified for and used leave under the Family Medical Leave Act ("FMLA") on an intermittent basis. In January, 2015, Dr. Sabino D'Agostine ("Dr. D'Agostine") imposed a 65 pound lifting restriction on Varner. At some time in the early part of 2015, Serco consolidated to a smaller warehouse in a different location, which did not allow the use of forklifts as much as at the prior location where Varner worked and thus required more manual lifting. In May,

1

2015, Varner sought another independent medical evaluation from Dr. Steven Poletti ("Dr. Poletti"), who imposed a 35 pound lifting restriction. Varner's attorney sent Dr. Poletti's report to Serco's workers' compensation defense attorney "to argue for a bigger settlement." ECF No. 27 at 5. When Al Rauchut ("Rauchut"), Varner's supervisor, learned of the 35 pound lifting restriction, he suspended Varner's employment, and on July 11, 2015, Serco terminated Varner's employment with the company.

On June 29, 2016, Varner filed suit, bringing three causes of action against Serco: Violation of the Americans with Disabilities Act ("ADA"), violation of the FMLA, and retaliation under S.C. Code of Laws § 41-1-80. On July 14, 2017, Serco filed a motion for summary judgment. Magistrate Judge Bristow Marchant entered a recommendation on October 27, 2017, which recommended that judgment be granted with respect to the first two causes of action and that the third claim be dismissed without prejudice to allow Varner to pursue it in state court. On March 12, 2018, the court filed an order adopting in part and denying in part the recommendations. The court dismissed Varner's ADA and FMLA claims, but did not dismiss his third cause of action, choosing instead to exercise supplemental jurisdiction over the remaining claim. Serco filed a second motion for summary judgment on Varner's state-law claim on June 28, 2018. ECF No. 26. On July 12, 2018, Varner filed his response, ECF No. 47, and on July 19, 2018, Serco filed its reply. The motion has been fully briefed and is ripe for the court's review.

## II.  STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) of the Federal Rules of Civil Procedure requires that

the district court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Any reasonable inferences are to be drawn in favor of the nonmoving party. See Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012). However, to defeat summary judgment, the nonmoving party must identify an error of law or a genuine issue of disputed material fact. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); see also Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003).

Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. See Anderson, 477 U.S. at 252; Stone, 105 F.3d at 191. Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)). If the adverse party fails to provide evidence establishing that the factfinder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'" Id. (quoting Anderson, 477 U.S. at 248).

### III. DISCUSSION

There are no genuine disputes about any material facts in this case. Rather, the parties disagree as to how the court should apply the law to the facts of this matter.

Varner argues that "in evaluating whether Mr. Varner was fired for filing a workers' compensation claim . . . or because of a work restriction he never requested, the proper standard to evaluate the issues under is the scintilla standard." ECF No. 47 at 4. In support he cites only <u>Froneberger v. Smith</u>, 748 S.E.2d 625 (S.C. Ct. App. 2013). Not only does <u>Froneberger</u> have nothing to do with retaliatory discharge claims, but that case was before a state court, operating under state civil procedure. The current matter is in federal court, so although South Carolina law controls the substantive issues, any procedural issues, such as summary judgment, are controlled by federal procedural law. Under the Federal Rules of Civil Procedure, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." <u>Anderson</u>, 477 U.S. at 251. Rather, when considering a motion for summary judgment, "[t]he judge's inquiry [ ] unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." <u>Id.</u> Looking at the undisputed facts, the court finds that Varner has failed to prove his claim by a preponderance of the evidence.

Varner's third and only remaining cause of action alleges that his termination by Serco was "retaliatory in nature for [Varner's] filing a workers' compensation claim" and that the "arbitrary and irrational reason given was pretextual, all in violation of the S.C. Code of Laws § 41-1-80." ECF No. 1 ¶ 59. Under § 41-1-80, "[n]o employer may discharge or demote any employee because the employee has instituted or caused to be instituted, in good faith, any proceeding under the South Carolina Workers' Compensation law." S.C. Code § 41-1-80. "Any employer who violates any provision of this section is liable in a civil action for lost wages suffered by an employee as a result of

this violation, and an employee discharged or demoted in violation of this section is entitled to be reinstated to his former position." Id. "The burden of proof is upon the employee." Id.

"A retaliatory discharge claim is an equity action tried without a jury." Hinton v. Designer Ensembles, Inc. 540 S.E.2d 94, 96 (S.C. 2000). In order to prevail on such a claim, a former employee must demonstrate the following: (1) he instituted or was otherwise involved in workers' compensation proceedings; (2) he was discharged or demoted; and (3) there is a "causal connection between the first two elements." Id. In order to determine causation under a workers' compensation claim, the court relies on the "determinative factor" test, which "requires the employee establish that he would not have been discharged 'but for' the filing of the workers' compensation claim." Id.

Here, Varner has satisfied the first two requirements—he did institute a workers' compensation proceeding after his injury, and about one year later, he was discharged. However, he has failed to prove a causal connection between the two. More specifically, he has not demonstrated that he would have been discharged "but for" his filing the workers' compensation claim. In order to avoid violating § 41-1-80, employers must "articulate[] a legitimate, nonretaliatory reason for the termination." Id. Here, Serco has articulated a legitimate, nonretaliatory reason—that Varner's 35 pound lifting limitation prevented him from being able to do his job in the warehouse which required that he be able to lift 50 pounds.

"Section 41-1-80 and statutes like it do not [ ] require an employer to retain an employee who can no longer perform the duties of her job simply because her inability to perform the duties results from an on-the-job injury." Hines v. United Parcel Serv., Inc.,

736 F. Supp. 675, 678–79 (D.S.C. 1990).  In Hines the court considered the retaliation claim of a package delivery driver who, as the result of an accident, had her lifting capacity restricted to 50 pounds maximum.  As her job required her to be able to lift up to 70 pounds on a regular basis, she was terminated due to her inability to perform the duties of the job.  Id.  The court granted summary judgment in favor of the employer, finding that it had not wrongfully terminated her employment.  Likewise, Serco did not violate § 41-1-80 by terminating Varner after it learned that he could only lift 35 pounds maximum, which rendered him unable to perform the duties of the job.

Varner argues that the following three pieces of evidence show that Serco did in fact terminate him as retaliation for his workers' compensation claim: (1) the timing; (2) an email from Francisco Magana ("Magana"), Serco's Human Resources Manager; and (3) a draft version of a workers' compensation settlement agreement ("draft agreement") between Serco and Varner.  First, in regards to the timing—"[i]f the employer articulates a legitimate, nonretaliatory reason for the termination, the proximity in time between the work-related injury and the termination is not sufficient evidence to carry the employee's burden of proving a causal connection."  Hinton, 540 S.E.2d at 97.  Here, not only has Serco articulated a legitimate, nonretaliatory reason for Varner's termination, but there is also insufficient "proximity in time between the work-related injury and the termination" to indicate that the termination was retaliatory.  Varner filed his workers' compensation proceedings in July, 2014.  He was not terminated until a full year later.  If anything, the timing demonstrates that he was terminated due to the 35 pound lifting restriction; Rauchut was informed in June, 2015 of the restriction, and the next month Serco terminated Varner's employment.  Rauchut Decl. ¶ 20.

Varner next argues that an email sent by Magana on July 2, 2015—which says "[d]o we usually wait for the settlement before terminating an employee that's being represented?"—is a "clear statement that it was [Serco's] policy to fire workers' compensation claimants." ECF No. 47 at 3. The court disagrees. Rather, the email in question from Magana, when read in context, merely affirms that Serco terminated Varner for the sole reason that he was unable to perform the job duties. The email communication began with a message between two Serco employees, saying that "Jena Hart called and said this employee is totally disabled and not able to perform functions of the job . . . ." ECF No. 46-9. What follows is a discussion between various Serco employees about the appropriate process for terminating Varner and which includes statements like, "this particular employee is out on an injury that we cannot accommodate his restrictions. He knows the restrictions very well and has legal representation." One employee eventually contacted Magana, saying that she was "seeking approval to terminate an employee Marcius Varner. He has been out on a Workers' Comp and the restrictions he has are permanent. In addition, the restrictions he has cannot be accommodated." Magana then responded, asking for more background information, such as when Varner was injured, whether he has applied for help under the FMLA, and whether his workers' compensation case has already settled. After several more back and forth emails, Magana asked whether "we usually wait for the settlement before terminating an employee that's being represented?" Hart replied to this that "no, typically when we know there are permanent restrictions that cannot be accommodate[d], the manager tells the employee immediately that there is no work and that they are to be terminated." This email exchange does not demonstrate what Varner purports it to—a

policy of retaliatory termination after the filing of a workers' compensation claim. Rather, it shows that the consistent reason for terminating Varner was his inability to complete the functions of the job due to his physical limitations. And the message in question is part of a longer conversation between members of Serco's human resources department trying to gather all of the facts surrounding Varner's employment and workers' compensation claim to determine the appropriate process by which to finalize his termination.

Varner also argues that an early draft of a settlement between Varner and Serco regarding his workers' compensation claim demonstrates that "when Varner would not agree to resign to get a better settlement, the Company found another way to terminate him." ECF No. 47 at 3. While the draft agreement does have language about Varner resigning as part of the settlement, the draft agreement also states that "[i]n exchange for the benefits provided herein, [Varner] was terminated from the company effective July 9, 2015 due to Employer not being able to accommodate the permanent work restrictions from Dr. Poletti." ECF No. 47-8, ¶ 4.

Varner also argues that there is a genuine issue of fact as to whether or not he was under a 35-pound weight restriction, and that "[p]eople work all of the time in excess of what doctors recommend." ECF No.1 46 at 4, 8. The court finds this argument unavailing. There is no dispute that Dr. Poletti gave Varner a 35 pound lifting restriction. Whether or not Varner personally desired to ignore the doctor's restriction and continue to lift up to 50 pounds is not relevant to the discussion. Dr. Poletti's restriction led Serco to terminate Varner, and the court will not penalize Serco for abiding by these restrictions imposed by a doctor whose second opinion Varner himself sought out.

After determining that there are no genuine disputes about any material facts in this case, the court finds that Varner has failed to prove a "but for" causal link between his initiation of workers' compensation proceedings and Serco's decision to terminate his employment. Thus, Varner does not have a valid retaliatory termination claim under § 41-1-80, and the court must grant summary judgment.

### IV.   CONCLUSION

Based on the above, the court **GRANTS** the motion for summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 24, 2018**
**Charleston, South Carolina**